[Civ. No. 3606.  First Appellate District, Division One.—December 20, 1920.]

## E. M. MURRILL, Appellant, v. E. J. VAN VLEET, Respondent.

**[1] ACCOUNTS — ACTION TO RECOVER ALLEGED BALANCE — EVIDENCE — FINDINGS—PAYMENTS PRO TANTO.**—In this action to recover an alleged balance upon a mutual, open, and current account for pasturage furnished by plaintiff, viewing the evidence in the most favorable light for plaintiff, the amount paid by defendant for

taxes on the real property which was in the possession of plaintiff under a contract to purchase the same constituted a mere payment *pro tanto* of the indebtedness of defendant to plaintiff for pasturage of stock on said property which left defendant without any demand or right of action for the money thus paid by him, and the jury was not warranted in finding, as it did, that it was agreed by the parties that the payments of the taxes by defendant were matters of setoff to be charged to plaintiff and credited to defendant pending the final settlement of the account.

APPEAL from an order of the Superior Court of Fresno County granting a new trial. M. F. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Irvine P. Aten, Gallaher & Simpson and Ray W. Hays for Appellant.

Strother P. Walton for Respondent.

WOOD, P. J., *pro tem.*—This is an action to recover an alleged balance of $5,190.55 upon a mutual, open, and current account for pasturage furnished by plaintiff between October 1, 1915, and April 1, 1918. The credit allowed to defendant is $200.45 for moneys paid by him for taxes upon land, which was in the possession of plaintiff under a contract to purchase the same from defendant.

There was a verdict for plaintiff for $2,716.92. Upon a motion for a new trial, the court made a conditional order granting it, unless within ten days plaintiff should remit all of the judgment in excess of $300. He declined to accept the reduction and has appealed from the order.

The principal point raised here and argued by the parties is as to the sufficiency of the evidence to establish a mutual account. It is contended by appellant that if there is any evidence to uphold the findings of the jury, then the order must be reversed, because, as he claims, for certain reasons not necessary here to mention, the order cannot be construed under section 657 of the Code of Civil Procedure as amended in 1919 (Stats. 1919, p. 141), as having been granted upon any other ground than that of a legal insufficiency of the evidence to show a mutual account. The appellant relies upon no evidence other than his own, to

support the verdict, which is as follows: "Q. Now, tell what, if anything, was said about pasturing cattle. A. Well, I says, 'I am not able to pay my taxes, and I have to pay you one-half of the money out of everything I make on the place, and I am not able to pay the taxes,' I said, 'Will you help me to pay the taxes?' He says, 'Yes, we can arrange it.' I says, 'How?' He says, 'I have a lot of stock, and I take in a lot of stock from the neighbors I will put in the pasture at $2.50 a head a month, and,' he says, 'I will pasture it.' And I says, 'You will pay my taxes, and take your seventy-five or the one hundred dollars out of it, and then you credit me with the remainder.' He says, 'Yes, I will do that.' He says, 'Well, we will take Benge there for witness.' Benge was standing there at the gate. And I says, 'All right.' Benge and his wife both were standing there. And he says, 'That is all right,' and we went on, and that was about all the pasture matter at that time."

Benge was called as a witness for plaintiff Murrill and his version of the conversation is as follows:

"Why, Mr. Murrill, he says to Van, he says, 'What about the taxes?' he says, 'I am not able to pay them.' And Mr. Van Vleet says, 'Well, you needn't worry about that, Mr. Murrill,' he says, 'I have plenty of stock, horses and cattle,' and he says, 'I will pay the taxes on the place for the use of the pasture.' Then Mr. Murrill replies to him, he says, 'Mr. Van, how much is the taxes?' Van Vleet says, 'They are seventy-five or one hundred dollars,' and Mr. Murrill says, 'All right, Van.' He says, 'Now, all over seventy-five or one hundred dollars, whatever the taxes are,' he says, 'you give me credit on the contract of the place,' and Mr. Van Vleet says, 'All right,' he says, 'Benge is present. He is a witness.' "

The defendant, Van Vleet, testified: "Why, he said if it didn't interfere with his crops, he would tell me when I could pasture; if he wanted to plow the ground, I had to take my stock away. If it didn't interfere with his crops and farming, I could have the pasture, after he took his crops off and before he put the crop in in the spring, if I would pay the taxes."

Appellant quotes and places much reliance upon the following excerpts from the opinion of this court in *Copriviza* v. *Rilovich,* 4 Cal. App. 26, [87 Pac. 398]:

"Where different conclusions may be reasonably drawn by different minds from the same evidence as to whether an account is a mutual account, the question is one for the jury. . . .

"Under the evidence in this case it was for the jury to determine what was intended by the parties—whether the moneys paid to third parties for clothing for plaintiff's sister were intended to be payments to plaintiff, or were matters of setoff to be charged to plaintiff and credited to defendants pending the final settlement of the account."

It appears from the record in that case that Copriviza was the bookkeeper for Rilovich Bros. and that he had entered on their books to his credit, his monthly salary, certain moneys he had loaned to the defendants and various amounts that he had paid out and advanced for them. He charged himself with the cash they paid to him. In order to establish the fact that there was mutual account Copriviza relied upon certain charges that he had made against himself for clothing, dressmaking, and a hat for his sister, which had been paid for by Rilovich Bros. at his request. He told them "to buy all the clothes his sister needed, and whenever they spent anything to tell him and he would put it down and *charge it to his account."* (Italics ours.)

In the decision in that case it was said that there was a difference between the payment of money by a debtor to a creditor, and the payment of money by a debtor to a third party at the request of the creditor; that in the first case it is presumed to be a payment on the debt, while in the second it may be a payment on the debt if the parties so agree, or it may be a matter of setoff for which an action would lie. In that case the money disbursed for Copriviza's sister was entered in the books of Rilovich Bros. as cash payments, but Copriviza kept a private personal account of all his transactions with the firm in all respects similar to such account, except in his private account there were entries of the various articles of clothing and the price paid for each. Under this situation and the circumstances surrounding the case, this court held that a different conclusion might be drawn by reasonable men as to whether the parties intended that moneys paid out for the sister were

intended to be cash payments or were matters of setoff upon which a demand arose in favor of Rilovich Bros.

In *Carter* v. *Canty,* 181 Cal. 749, [186 Pac. 346], it is said that the conclusion reached in that case goes to the border line. In the case last mentioned, the claim that there was a mutual account existing between Carter and Canty, was disposed of by the supreme court in this language: "To our minds no inference may reasonably be drawn from this situation other than that this transaction was mutually intended to operate as payment *pro tanto* of the indebtedness of Canty to Carter, leaving Canty without any demand or right of action for the money. If this be so it could not have the effect, in view of our own decisions and the overwhelming weight of authority elsewhere, to give to the account the character of a 'mutual' account, one where there are reciprocal demands between the parties." The above-quoted language is applicable to the facts in the instant case, which are unlike those in *Copriviza* v. *Rilovich,* where the debtor advanced money for the benefit of a *third* party at the request of the creditor with the understanding that it was to be *charged to the creditor's account.* [1] Viewing the evidence in the most favorable light for appellant, the amount paid by respondent for taxes constituted a mere payment *pro tanto* of the indebtedness for pasturage, which left respondent without any demand or right of action for the money.

The only theory upon which appellant could have gone to the jury upon his claim that it was a mutual account was that he was a vendee in possession under a contract to purchase; that he informed the vendor that he was unable to perform his obligation to pay the taxes on the land; that the latter in return for the privilege of pasturing his stock thereon at the price of $2.50 per head per month agreed to pay the taxes and allow the vendee credit on his contract for the *balance.*

This constituted a distinct understanding to apply the moneys paid on account of taxes toward the satisfaction of the pasturage bill, an unequivocal agreement to credit such moneys as payments on account of pasturage, and the jury was not warranted in finding, as it did, that it was agreed by the parties that the payments of the taxes were matters of setoff to be charged to Murrill and credited to

Van Vleet pending the final settlement of the account. The only credit to be extended to Van Vleet was the *remainder, after taking out the taxes.* There is no evidence from which any other credit may be inferred.

The order of the court granting a new trial is affirmed.

Richards, J., and Kerrigan, J., concurred